**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.PeltonGraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JOSE YSLA BAZAN, ANGEL ARENAS, JAVIER GRANADOS and LORENZO ARENAS, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | **CLASS & COLLECTIVE ACTION COMPLAINT** |
| -against- | **Jury Trial Demanded** |
| **WILLIAM K. CONSTRUCTION GROUP, INC., WILLIAM K. CONSTRUCTION & ROOFING, INC., WILLIAM K. CONSTRUCTION, INC. d/b/a WILLIAM K. CONSTRUCTION GROUP, WILLIAM KRKUTI, EDMONT KRKUTI, and PETRIT KRKUTI, Jointly and Severally,** | |
| **Defendants.** | |

Plaintiffs Jose Ysla Bazan, Angel Arenas, Javier Granados and Lorenzo Arenas (the "Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves and upon information and belief at to other matters, allege as follows:

1

## NATURE OF THE ACTION

1.      Plaintiffs are former construction workers, demolition workers, roofers, glaziers, bricklayers, suspended scaffold employees, and general laborers for Defendants' general construction and structural repair and restoration company.  For their work, despite the fact that Plaintiffs and Defendants' other non-exempt employees worked more than forty (40) hours per week, Defendants paid Plaintiffs on a "daily rate" or hourly basis without overtime premiums for hours worked over forty (40) in a given workweek.

2.      Plaintiffs bring this action to recover unpaid overtime wages owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*.

3.      Plaintiffs also bring this action to recover damages for Defendants' failure to provide proper wage statements and wage notices pursuant to the NYLL.

4.      Plaintiffs bring their FLSA claim on behalf of themselves and all other construction and/or demolition workers, including but not limited to, roofers, glaziers, bricklayers, suspended scaffold employees, and general laborers of Defendants.

5.      Plaintiffs bring their NYLL unpaid overtime, wage statement and wage notice claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of construction and demolition workers, including but not limited to, roofers, glaziers, bricklayers, suspended scaffold employees, and general laborers of Defendants in New York.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA

pursuant to 29 U.S.C. § 216(b).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events or omissions giving rise to the claims occurred in this district and Defendants maintain business locations in this district.

8.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

<u>**THE PARTIES**</u>

<u>**Plaintiffs**</u>**:**

9.     Plaintiff <u>Jose Ysla Bazan</u> ("Ysla") was, at all relevant times, an adult individual residing in Bronx County, New York.

10.     Plaintiff <u>Angel Arenas</u> ("A. Arenas") was, at all relevant times, an adult individual residing in Bronx County, New York.

11.     Plaintiff <u>Javier Granados</u> ("Granados") was, at all relevant times, an adult individual residing in Kings County, New York.

12.     Plaintiff <u>Lorenzo Arenas</u> ("L. Arenas") was, at all relevant times, an adult individual residing in Kings County, New York.

13.     Throughout the relevant time period, Plaintiffs worked for Defendants in and around the New York City area based out of Defendants' main corporate offices at 19 Fulton Street, Suite 402, New York, New York 10038.

14.     Plaintiffs consent in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

<u>**Defendants**</u>**:**

15.     Defendant William K. Construction Group, Inc. is an active domestic business

corporation with its principal place of business at 19 Fulton Street, Suite 402, New York, New York 10038.

16.     Defendant William K. Construction, Inc. is an active domestic business corporation with its principal place of business at 36 Marisa Circle, Staten Island, New York 10309.

17.     Defendant William K. Construction & Roofing, Inc. is an active domestic business corporation with its principal place of business at 36 Marisa Circle, Staten Island, New York 10309.

18.     Defendants William K. Construction Group, Inc., William K. Construction, Inc., and William K. Construction & Roofing, Inc., are hereinafter referred to collectively as "William K. Construction Group" or the "Corporate Defendants."

19.     Defendant William (Ylber) Krkuti ("W. Krkuti") is an owner, operator and manager of the Corporate Defendants and sets the Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

20.     Defendant Edmont (Eddie) Krkuti ("E. Krkuti") is an owner, operator and manager of the Corporate Defendants and sets Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

21.     Defendant Petrit (Peter) Krkuti ("P. Krkuti" and together with W. Krkuti, and E. Krkuti, the "Individual Defendants" and collectively with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants and sets Corporate Defendants' payroll policies, including the unlawful practices complained of herein.

22.     Throughout the relevant time period, the Individual Defendants were in charge of hiring and firing employees, setting schedules and wage rates, determining William K. Construction's policies with respect to payroll, and otherwise running the business of William K.

Construction Group.

23.     The Individual Defendants participated in the day-to-day operations of the Corporate Defendants and acted intentionally and maliciously in their direction and control of Plaintiffs and the Corporate Defendants' other similarly situated employees, and are an "employer" pursuant to the FLSA, 29 U.S.C. § 203 (d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

24.     The Corporate Defendants' operations are interrelated and unified.

25.     The Corporate Defendants are joint employers of Plaintiffs and the Collective Action Members/Class Members.

26.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

27.     Upon information and belief, at all relevant times, the Defendants had gross revenues in excess of $500,000.00.

28.     At all relevant times, Defendants employed and/or continues to employ Plaintiffs and each Collective Action Member within the meaning of the FLSA, 29 U.S.C. § 203(d).

29.     At all relevant times, Defendants employed and/or continues to employ Plaintiffs and each Class Member within the meaning of the NYLL, §§ 2 and 651.

## FLSA COLLECTIVE ACTION ALLEGATIONS

30.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of the following collective:

> All persons employed by Defendants at any time since January 17, 2016 and through the entry of judgment in this case (the "Collective Action Period") who worked for Defendants as construction

workers and/or demolition workers, including but not limited to, roofers, glaziers, bricklayers, suspended scaffold employees, and general laborers (the "Collective Action Members").

31.     A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay Plaintiffs and similarly situated employees overtime premiums for all hours worked over forty (40) per workweek.  As a result of this policy, Plaintiffs and the Collective Action Members did not receive the legally required overtime premium payments for all hours worked in excess of forty (40) per week.

32.     Plaintiffs and the Collective Action Members had substantially similar job duties, work schedules, and were paid by Defendants pursuant to the same or substantially similar payment structure.

## RULE 23 CLASS ACTION ALLEGATIONS

33.     Pursuant to the NYLL, Plaintiffs bring their Second through Fourth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

> All persons employed by Defendants at any time since January  17, 2013 and through the entry of judgment in this case (the "Class Period") who worked for Defendants as construction workers and/or demolition workers, including but not limited to, roofers, glaziers, bricklayers, suspended scaffold employees, and general laborers (the "Class Members").

34.     The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

35.     The Class Members are so numerous that joinder of all members is impracticable.

36.    Although the precise number of Class Members is unknown to Plaintiffs, the facts on which the calculation of that number can be based is presently within the sole control of Defendants.

37.    Upon information and belief, there are approximately forty (40) Class Members.

38.    <u>Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting the individual members of the Class</u>.  Such common questions will determine Defendants' liability to all (or nearly all) Class Members.  These common questions include, but are not limited to:

a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums when they worked more than forty (40) hours in a given workweek;

c.    whether Defendants' policy of failing to pay workers overtime premiums was instituted willfully or with reckless disregard of the law;

d.    whether Defendants failed to provide Plaintiffs and the Class Members with a proper wage notice at the beginning of their employment and/or on February 1 of each year, as required by the NYLL;

e.    whether Defendants failed to provide Plaintiffs and the Class Members with a proper wage statement with their wages, as required by the NYLL;

f.    whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

g.    whether Defendants are liable for all damages claimed hereunder, including but not

limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

39.     The answers to these questions would drive resolution of the litigation. If a judge and/or jury agrees with Plaintiffs on these issues, Defendants would be liable to all Class Members for their NYLL wage and hour violations.

40.     Plaintiffs' claims are typical of the Class Members' claims.  Plaintiffs, like all Class Members, were demolition workers, construction workers, roofers, glaziers, bricklayers, suspended scaffold employees, and general laborers who worked for Defendants pursuant to their corporate policies.  Plaintiffs, like all Class Members, were, *inter alia*, not paid overtime premium pay for hours worked over forty (40) in a given workweek; were not provided with proper wage statements; and were not provided with proper wage notices.  If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

41.     Plaintiffs and their Counsel will fairly and adequately represent the Class.  There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover their own wages.

42.     Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

43.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

44.     Defendants are sophisticated parties with substantial resources.  Individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

45. The individual members of the class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

**Defendants' Company**

46. At all relevant times, Defendants have been in the construction, demolition, structural repair, historic restoration, and exterior cleaning business. According to the William K. Construction's website: *"...The William K. Construction Group, Inc. specializes in structural repair, historic restoration and exterior cleaning on buildings, both private and commercial. We take great pride in every step from inspection and surveys to complex operations. Our field managers are skilled, dedicated professionals who stay involved with each project from the initial meeting to the final clean-up. Their mission is to restore building health as well as meet all our clients' needs."* (www.williamkgroup.com/)

47. Upon information and belief, Defendants William Krkuti, Edmont Krkuti, and Petrit Krkuti, are a constant presence and regularly visit the different job locations where William K. Construction Group is providing its services, to manage and/or check in on their foremen and supervisors and the operations of the company and the advancement of their work, and take an active role in ensuring that at all job sites, construction and demolition projects are run in accordance with their procedures and policies.

48. Upon information and belief, at all relevant times, the Individual Defendants have had power over payroll and personnel decisions at William K. Construction Group, including the power to hire and fire employees, set their wages, retain time and/or wage records, and otherwise

control the terms and conditions of their employment.

49.     Upon information and belief, the Individual Defendants, directly or through their agents and employees, operate and manage all William K. Construction Group job sites with the same or substantially similar employment practices and policies, and through common management, ownership and financial control.

**Plaintiffs' Work for Defendants**

50.     **Plaintiff Jose Ysla Bazan** was employed by Defendants as a construction worker, demolition worker, bricklayer, suspended scaffold employee, and general laborer, from in or around September 2007 to in or around February 2018 (the "Ysla Employment Period").

51.     During the Ysla Employment Period, Plaintiff Ysla typically worked six (6) days per week, with most Sundays off.  At the end of his employment period, in or around the beginning of 2018, Plaintiff Ysla usually worked six (6) days and sometimes five (5) days per week, with mostly Saturdays and/or Sundays off.

52.     Plaintiff Ysla typically worked from between approximately 7:00 am and 8:00 am to between approximately 4:00 pm to 6:00 pm, and sometimes more if they had to perform a job inside buildings instead of exterior work, eight (8) to eleven (11) hour shifts (and for projects inside buidings approximately twelve (12) to fourteen (14) hour shifts), for a total of approximately forty-eight (48) to sixty-six (66) hours per week, and sometimes more.

53.     For a period of approximately seven (7) months, in or around 2012 to in or around 2013, Plaintiff Ysla and other employees of Defendants, did a construction and restoration project in Baltimore, Maryland, where they were required to work seven (7) days per week, from approximately 7:00 am to approximately 5:00 pm, ten (10) hours shifts, for a total of approximately seventy (70) hours per week.

54.     For his work, from in or around 2010 to in or around 2013, Plaintiff Ysla was paid approximately fourteen dollars ($14.00) per hour, for all hours worked, including those beyond forty (40) in a workweek.  From in or around 2013 to in or around 2017, Plaintiff Ysla was paid approximately seventeen dollars ($17.00) per hour, for all hours worked, including those beyond forty (40) in a workweek.  From in or around 2017 to in or around the end of his employment period, Plaintiff Ysla was paid approximately eighteen dollars and fifty cents ($18.50) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

55.     Throughout his entire employment period, Plaintiff Ysla received his wages in a check, with an inaccurate pay stub that did not show the amount of hours he worked during the week or the amount he was receiving for his regular hours and the hours worked beyond forty (40) in a work week.

56.     **Plaintiff Angel Arenas** was employed by Defendants as a construction worker, demolition worker, bricklayer, and general laborer, usually performing exterior jobs on a suspended scaffolding, from in or around 2002 to in or around March 2018 (the "A. Arenas Employment Period").

57.     Throughout the A. Arenas Employment Period, Plaintiff A. Arenas typically worked six (6) days per week, sometimes five (5) days per week, with most Sundays off.  Plaintiff A. Arenas typically worked during the week from between approximately 7:00 am and 8:00 am to between approximately 4:00 pm and 7:00 pm, eight (8) to twelve (12) hour shifts, and during Saturdays, eight (8) hour shifts, for a total of approximately forty-eight (48) to sixty-eight (68) hours per week.

58.     For his work, from in or around 2012 to in or around 2016, Plaintiff A. Arenas was paid eighteen dollars ($18.00) per hour, for all hours worked, including those beyond forty (40) in

a given workweek.  From in or around 2016 to the end of his employment period, in or around March 2018, Plaintiff A. Arenas was paid twenty-two dollars ($22.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

59.    From in or around 2004 to the end of his employment period, Plaintiff A. Arenas received his wages in a check accompanied with an inaccurate pay stub that did not reflect the number of hours worked during the specific work period and the amount he was paid for his regular or overtime hours during a given workweek.

60.    **Plaintiff Javier Granados** was employed by Defendants as a construction worker, demolition worker, roofer, glazier, bricklayer, welder, and general laborer, from in or around 1998 to in or around June 2016 (the "Granados Employment Period").

61.    Throughout the Granados Employment Period, Plaintiff Granados typically worked six (6) days per week, with most Sundays off.   Plaintiff Granados typically worked Mondays to Saturdays from approximately 7:00 am to between approximately 4:00 pm and 7:00 pm, eight (8) to twelve (12) hour shifts, for a total of approximately forty-eight (48) to seventy-two (72) hours per week.  On occasions, when the company was performing certain renovation jobs throughout the New York city area, Plaintiff Granados could be assigned to a regular shift performing renovations on an exterior job, finish there around 5:00 pm or 6:00 pm, and later be assigned (on the same day) to provide services for a job inside a building.  On those occasions, Plaintiff Granados' shifts could end as late as between approximately 8:00 pm to 9:00 pm.

62.    For his work, during the relevant time period, from in or around 2012 to in or around 2014, Plaintiff Granados was paid approximately thirteen dollars ($13.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  For in or around 2014 to in or around 2015, Plaintiff Granados was paid approximately fifteen dollars ($15.00) per hour, for all

hours worked including those beyond forty (40) in a given workweek. For in or around 2015 to the end of his employment period in or around 2016, Plaintiff Granados was paid approximately seventeen dollars and fifty cents ($17.50) per hour, for all hours worked, including those beyond forty (40) in a given workweek.

63.     For the relevant time period, from in or around 2012 to the end of his employment period, Plaintiff Granados received his wages in a check accompanied with an inaccurate pay stub that did not reflect the number of hours worked during the specific work period and the amount he was paid for his regular or overtime hours during a given workweek.

64.     **Plaintiff Lorenzo Arenas** worked for Defendants as a construction worker, demolition worker, roofer, glazier, bricklayer, welder, and general laborer usually performing exterior jobs on a suspended scaffolding, from in or around 2005 to in or around November 2018 (the "L. Arenas Employment Period").

65.     For the relevant time period, from in or around 2012 to in or around 2015, Plaintiff L. Arenas typically worked six (6) days per week, with most Sundays off. Plaintiff L. Arenas typically worked Mondays to Saturdays from approximately 7:00 am to approximately 4:00 pm, and if they were performing work inside a building it could be until between 7:00 pm and 8:00 pm, shifts of approximately nine (9) to thirteen (13) hours per day, for a total of approximately fifty-four (54) to seventy-eight (78) hours per week.

66.     From in or around 2015 to in or around 2018, at the end of his employment period, Plaintiff L. Arenas generally worked six (6) days per week with most Sundays off. During that period, when Plaintiff L. Arenas was not required to go to the shop early in the morning and after he finished work at the job sites, Plaintiff L. Arenas typically worked three (3) days from approximately 7:00 am to between approximately 5:00 pm and 5:30 pm, and the other three (3)

days from approximately 8:00 am to between approximately 4:00 pm and 4:30 pm, for a total of approximately fifty-four (54) hours per week, on average.

67.     For his work, for the relevant time period from in or around 2012 to in or around 2016, Plaintiff L. Arenas was paid approximately one hundred thirty six dollars ($136.00) per day, for an eight (8) hours shift.  Thereafter, from in or around 2016 to in or around 2017, Plaintiff L. Arenas was paid seventeen dollars ($17.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  From in or around 2017 to in or around May 2018, Plaintiff L. Arenas was paid eighteen dollars ($18.00) per hour, for all hours worked, including those beyond forty (40) in a given workweek.  From in or around May 2018 until the end of his employment period, in or around November 2018, Plaintiff L. Arenas was paid nineteen dollars ($19.00) per hour.

68.     From the beginning of his employment period, in or around 2005 to in or around 2015, Plaintiff L. Arenas received his wages entirely in cash, without a pay stub or any other wage statement with a breakdown of the hours worked or the amount he was paid for his regular or overtime hours. For in or around 2016 in or around May 2018, Plaintiff L. Arenas received his payment with a check accompanied by an inaccurate pay stub that did not reflect the number of hours worked during the specific work period and the amount he was paid for his regular or overtime hours during a given workweek.  From in or around May 2018 to the end of his employment period, in or around November 2018, Plaintiff L. Arenas received his payment with a check and a pay stub with the correct number of hours recorded on it.

69.     Throughout their respective employment periods, Plaintiffs were paid their wages either entirely in cash without a wage statement, or with an inaccurate wage statement that not provide a breakdown of their hours worked for the pay period, their hourly rate(s), or any other

information required by the NYLL.

70.     Throughout their respective employment periods, Defendants did not provide a reliable timekeeping system to track the actual hours each Plaintiff worked on a specific job site during the course of the day and/or the work week.

71.     Throughout their respective employment periods, despite the fact that they routinely worked well in excess of forty (40) hours each week, Plaintiffs did not receive overtime premium pay for hours worked over forty (40) in a given workweek.

72.     When Plaintiffs were able to take a break, it typically lasted approximately thirty (30) minutes or less, but was sometimes interrupted in order to take care of different tasks, such as receive deliveries for materials and other supplies at the job site, or help to remove debris from the construction site.

73.     Defendants failed to provide Plaintiffs with wage notices at the time of hire or on February 1 of each year.

74.     Plaintiffs each observed Defendants W. Krkuti, E. Krkuti, and P. Krkuti, at the job sites, supervising employees and overseeing the operations of the business.

75.     Defendants have simultaneously employed other individuals in different job sites like Plaintiffs during the Class Period and Collective Action Period and continuing until today, to perform work as construction workers, demolition workers, bricklayers, roofers, glaziers, scaffolding employees, and general laborers.

76.     Upon information and belief, Defendants applied the same employment practices and policies to all of their construction and demolition workers including: paying a "daily rate" or an hourly rate that not cover overtime premiums for hours worked over forty (40) in a week; not providing accurate wage statements with each wage payment; and not providing wage notices on

the date of hire and/or before February 1 of each year.

77.    Defendants failed to maintain accurate records regarding the time worked by Plaintiff and Defendants' other employees and the wages paid (if any) to Defendants' employees.

### FIRST CAUSE OF ACTION
### FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Collective Action Members)**

78.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.    By failing to pay Plaintiffs and the Collective Action Members overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

80.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

81.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION
### NEW YORK LABOR LAW – UNPAID OVERTIME
**(Brought on Behalf of Plaintiffs and the Class Members)**

82.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though

fully set forth herein.

83.     Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) per week, in violation of the NYLL and regulations promulgated thereunder.

84.     Defendants' failure to pay overtime caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et al.*

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

85.     Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

86.     Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a

mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

87.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### FOURTH CAUSE OF ACTION
### NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
#### (Brought on Behalf of Plaintiffs and the Class Members)

88.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

89.    Defendants have willfully failed to supply Plaintiffs and the Class Members a proper wage statement as required by Article 6, § 195(3).

90.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred fifty dollars ($250) per employee for each day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.   Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.   Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.   An order tolling the statute of limitations;

d.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.   An injunction against Defendants and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.   An award of compensatory damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.   An award of liquidated and/or punitive damages as a result of the Defendants'

willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.    Fifty dollars ($50) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

i.    Two hundred and fifty dollars ($250) per Plaintiff and each of the Class Members for each day that the violations of NYLL § 195 occurred or continue to occur, or a total of five thousand dollars ($5,000) per Plaintiff and each of the Class Members as provided for by NYLL § 198(1)-d;

j.    An award of prejudgment and post-judgment interest;

k.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
      January 17, 2019

                Respectfully submitted,

                **PELTON GRAHAM LLC**

                By: _____
                Brent E. Pelton (BP 1055)
                pelton@peltongraham.com
                Taylor B. Graham (TG 9607)

graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs, the putative*
*FLSA Collective and Class*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de William K Construction Group y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
José Carlos Isla Bazán
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de William K Construction Group y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.


X  _____
              Firma

_____
              Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de William K Construction Group y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_____
JAVIER   GRANADOS
Nombre Escrito

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las Normas Laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de William K Construction Group y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_Lorenzo Arenas_
Firma

_Lorenzo Arenas_
Nombre Escrito