# PELTON GRAHAM LLC

### ADVOCATES FOR JUSTICE

Brent E. Pelton, Esq.

July 28, 2020                                                                Pelton@PeltonGraham.com

**VIA CM/ECF**

Magistrate Judge Kevin Nathaniel Fox
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:**    ***Ysla Bazan et al. v. William K. Construction Group, Inc. et al.***
        **Civil Action No. 19 Civ. 00508 (KNF)**

Dear Judge Fox:

       This firm represents plaintiffs Jose Ysla Bazan ("J. Bazan"), Angel Arenas ("A. Arenas"), Javier Granados ("J. Granados"), Lorenzo Arenas ("L. Arenas" and, together with J. Bazan, A. Arenas and J. Granados, the "Named Plaintiffs") and twenty-one (21) opt-in plaintiffs (the "Opt-in Plaintiffs" and, together with the Named Plaintiffs, the "Plaintiffs") with respect to their claims for unpaid overtime premiums and for failure to provide proper wage notices and wage statements against William K. Construction Group, William K. Construction, Inc. d/b/a William K. Construction Group (together, "William K. Construction" or the "Corporate Defendants"), Ylber Krkuti, misidentified in the Complaint as William Krkuti ("Y. Krkuti"), Edmont Krkuti, ("E. Krkuti") and Petrit Krkuti ("P. Krkuti" and, together with Y. Krkuti and E. Krkuti, the "Individual Defendants" and, collectively with the Corporate Defendants, the "Defendants"). We write, with the consent of counsel for Defendants, seeking the Court's approval of the parties' settlement, pursuant to the Fair Labor Standards Act ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). We respectfully submit that the attached negotiated Settlement Agreement and Wage and Hour Release ("Settlement Agreement") (**Exhibit A**) constitutes a fair and reasonable compromise of this matter, which should be approved by the Court.

## I.        Procedural History and Plaintiffs' Allegations

       The Named Plaintiffs commenced this action by filing their Class & Collective Action Complaint in the Southern District of New York ("SDNY") on January 17, 2019 against Defendants. (Dkt. No. 1). Defendants filed their Answer on March 5, 2019, denying all material allegations. (Dkt. No. 22). The parties negotiated mailing an FLSA Collective Action Notice to all construction and demolition employees, including but not limited to roofers, glaziers, bricklayers, suspended scaffold employees and general laborers, that were employed by William K. Construction Group, Inc. within the three years period prior to July 12, 2019 ("216(b) Notice"), which was approved by the Court on July 12, 2019. (*See* Order Dated July 12, 2019; Dkt. No. 30).

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Magistrate Judge Kevin Nathaniel Fox
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **2** of **7**

Plaintiffs mailed the 216(b) Notice to the list of fifty-three (53) collective action members provided by Defendants. Seventeen (17) individuals exercised their right to join the action pursuant to the FLSA by mailing in their signed "Consent to Become a Party Plaintiff" form to Plaintiffs' counsel prior to the September 30, 2019 opt-in deadline. (Dkt. Nos. 25-26, 33-42, 46-47, 49-51). After learning of contacts by Defendants with the potential plaintiffs, whereby Defendants were soliciting releases from the collective action members,[1] Plaintiffs sought relief from the Court in the form of corrective notice. (Dkt. No. 43). At the pre-motion conference on September 20, 2019, the parties agreed to sending the collective action members a corrective notice and the Court extended the opt-in deadline to October 30, 2019. (Minute Entry Dated 09/20/2019). Four (4) additional individuals exercised their right to join the action prior to the extended October 30, 2019 deadline. (Dkt. Nos. 53-56, 58).

On November 5, 2019, Plaintiffs served on Defendants their FRCP 26(a)(1) disclosures, including an initial production of several earnings statements and W2s. The next day, Defendants served their initial disclosures upon Plaintiffs and later served their document production, consisting of redacted timesheets and spreadsheets reflecting the wage rates received for the majority of Plaintiffs. During negotiations, Plaintiffs' counsel requested unredacted records in order to calculate a more thorough damages analysis for Plaintiffs and the putative Class Members. Defendants' counsel served unredacted records on a rolling basis beginning December 30, 2019.

During the November 6, 2019 Initial Pretrial Conference, the parties requested referral to the SDNY Mediation Program for assistance in reaching a resolution of this action, which the court granted on November 15, 2019. (Dkt. No. 59).

The parties subsequently participated in an in-person mediation session before Hon. Joseph Kevin McKay (Ret.) on February 3, 2020, during which Defendants requested additional time to review Plaintiffs' damages computation. A second mediation session was scheduled for March 16, 2020, which was held telephonically, and thereafter the parties engaged in several exchanges both telephonically and via email. After the Parties were not able to secure a settlement agreement on a class-wide basis, the Parties agreed to engage in further settlement negotiations on behalf of the Named Plaintiffs and Opt-In Plaintiffs only. Over the course of the next several weeks, the parties ultimately were able to negotiate a settlement in principle of the action on behalf of the Plaintiffs. Thereafter, throughout the next several weeks, the parties negotiated the remaining terms of the settlement, including whether Individual Petrit Krkuti should be included in the Settlement Agreement since the parties dispute the extent of his involvement with the administration and control over the Corporate Defendants during the relevant time period. The parties memorialized the final terms of their negotiations in the attached Settlement Agreement (**Exhibit A**).

---

[1] Upon information and belief, 15 potential plaintiffs ultimately signed the releases presented to them by Defendants in exchange for back wage payments.

Magistrate Judge Kevin Nathaniel Fox
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **3** of **7**

## II.    The Settlement Accounts for Litigation Risk

Throughout this litigation, the parties have held significantly different viewpoints on the underlying facts of this matter and Defendants' potential liability. Fundamentally, the parties dispute the number of hours that Plaintiffs worked, and the consistency of Defendants' pay practices.

The parties exchanged various documents, including timesheets and payroll records for most of the Plaintiffs, which Plaintiffs contend expose Defendants' unlawful pay practices. Defendants produced several timecards showing the time-in and time-out recorded for Plaintiffs for their respective employment periods, and "Employee Earning Records" listing Plaintiffs' regular wage, withholdings, and net pay. It is Plaintiffs' position that Defendants' records are incomplete and do not reflect the total number of hours that Plaintiffs worked throughout their respective employments. Defendants dispute these contentions and assert that Plaintiffs were paid appropriately for all hours worked.

Across the board, Plaintiffs alleged that they were paid a flat hourly rate for all hours worked, including those in excess of forty (40) hours regardless of the type of rate the Defendants' records indicated Plaintiffs received (i.e. piece work rate, overtime rate, regular rate, etc.). The parties dispute whether Defendants' practices with respect to the payment of overtime premiums was corrected fully during the latter portion of the relevant time period.

Plaintiffs also allege that they did not receive an accurate paystub or any other breakdown of the number of hours that they worked or their regular or hourly overtime rates. Although Plaintiffs received certain earnings statements, for the majority of their employment, the statements did not reflect the number of hours worked for any given pay period nor any distinction between the different category of rates. Further, at no point during their respective employment periods did Plaintiffs receive a wage notice, either at hiring or by February 1 of each year, containing, *inter alia*, information regarding rates of pay.

Although it is Plaintiffs' position that Defendants' time records are inaccurate, Plaintiffs recognize that the fact that Defendants are in possession of timecards and pay records which provides a steep obstacle to succeeding on their claims and that these documents could potentially limit the amount of damages Plaintiffs could recover at trial if a factfinder credited Defendants' records in their entirety. Due to the fact-intensive nature of these inquiries, it is likely that substantive answers to these disputed issues would not be resolved until after trial. Based on these disputes, Plaintiffs accepted Defendants' records as accurate throughout the mediation process, and the parties engaged in good-faith, arm's-length settlement negotiations regarding not only Plaintiffs' FLSA claims, but also their pendent state law claims.

Upon reviewing Defendants' document production, Plaintiffs computed a damages analysis incorporating Defendants' time records and relying on Plaintiffs' best estimates of the hours worked where no records were produced. Throughout the mediation process, the parties exchanged their respective damages analysis calculations, initially on behalf of the class. For

Magistrate Judge Kevin Nathaniel Fox
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **4** of **7**

purposes of settlement on behalf of the Named Plaintiffs and Opt-In Plaintiffs, Plaintiffs have calculated a total damages amount of $460,009.05, including $121,077.08 in unpaid overtime wages, $177,700.00 for wage notice and wage statement violations, $121,077.08 in liquidated damages, and $40,154.89 in statutory interest on the NYLL claims at 9% per annum.

Given the above, the settlement amount (i.e., $260,000.00) represents full compensation of the "actual" unpaid wages calculated from Plaintiffs' analysis, which would be the anticipated recovery if Plaintiffs had received a favorable outcome at trial under both federal and state law. While it does not compensate Plaintiffs for all of their liquidated damages, penalties, and attorneys' fees in addition to the damages, the parties believe that this is a fair and reasonable recovery based on the risks associated with proceeding to trial.

## III.    Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to settle this action for a total settlement amount of $260,000.00 (the "Settlement Amount"). Of that amount, $87,432.16 is payable to Plaintiffs' counsel (including $1,148.37 in expense reimbursements and $86,283.79 in attorneys' fees). The remaining $172,567.84 is payable directly to Plaintiffs (the "Net Settlement Amount").

Keeping in line with the trend in this Circuit following *Cheeks*, the parties have agreed to a wage-and-hour release for any claims arising before Plaintiffs signed the Settlement Agreement. The parties also did not include a confidentiality provision and have specifically included language in the Agreement making it clear that nothing in the Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

The agreement includes a mutual non-disparagement provision. The parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in a FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

1) First, the non-disparagement provision is mutual and binds both Parties. Following *Cheeks*, Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in a FLSA settlement agreement); *Caprile v. Harabel*, No. 14-CV-6386, 2015 U.S. Dist. LEXIS 127332 at *3 (S.D.N.Y. Sept. 17, 2015) (post *Cheeks* decision approving mutual non-disparagement clause but rejecting the inclusion of a confidentiality provision).

Magistrate Judge Kevin Nathaniel Fox
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **5** of **7**

    2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting the Parties to make truthful statements about their experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendants' interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

As well, the mutual non-disparagement clause is bolstered by additional provisions that permit either party to commence an action in the event of a breach of the agreement and to obtain reasonable attorneys' fees in the event that they prevail.

## IV.    Plaintiffs' Attorney's Fees and Expenses

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (**Exhibit B**), as of July 28, 2020, Plaintiffs' counsel has spent more than 207 hours in prosecuting and settling this matter, resulting in a lodestar of $54,357.87. Plaintiffs' counsel has spent $1,148.37 in actual litigation costs. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $86,283.79) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest 1.58 multiplier of the lodestar and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements. The retainer agreement between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour settlement in the Eastern District. *See Hall v. Prosource Tech*s., LLC, 14-cv-2502, 2016 U.S. Dist. LEXIS 53791 at *38-41 (E.D.N.Y. April 11, 2016). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

Magistrate Judge Kevin Nathaniel Fox
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **6** of **7**

### V.  The Parties Believe that the Settlement Is Fair and Reasonable

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at \*8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at \*22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at \*2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, \*3 (S.D.N.Y. Jan. 8, 2014).

Here, the proposed settlement reflects a reasonable compromise of Plaintiffs' claims and disputed issues and did not result from any "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations, including consisting of several communications and exchanges between the parties during which the parties discussed Plaintiffs' calculated damages and made reasonable revisions where there was dispute over Plaintiffs' alleged hours worked or any allocated damages amounts. Additionally, the Named Plaintiffs and most of the Opt-In Plaintiffs are former employees of Defendants so the fear of possible coercion is not at issue here. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to prevail on their FLSA claims in this litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

\*      \*      \*      \*      \*

Magistrate Judge Kevin Nathaniel Fox
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **7** of **7**


       As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties.  Therefore, the settlement is completely fair, reasonable, and adequate to the Plaintiffs and we respectfully request that the Court approve the Agreement.

       We appreciate Your Honor's attention to this matter. Please contact counsel for the parties should you have any questions regarding this submission.


       Respectfully submitted,

       */s/ Brent E. Pelton*

       Brent E. Pelton, Esq. of
       PELTON GRAHAM LLC


Enclosure

cc:     All counsel (via CM/ECF)